IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| VINCENT D. WOODRUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13-cv-0085 |
| | ) |
| W.B. MELTON, SHANNON HARVEY, | ) Judge Sharp |
| JOHN McCLOUD, DEBBIE DECK, | ) |
| JOHN MEADOWS III, and | ) |
| ART JOHNSON, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Vincent Woodruff, a state inmate presently incarcerated at the Overton County Jail in Livingston, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1). Because he is a prisoner who proceeds *in forma pauperis* against government officials, the complaint is before the Court for an initial review under the Prison Litigation Reform Act ("PLRA").

**I.  Standard of Review**

Under the PLRA, the Court is required to dismiss any *in forma pauperis* or prisoner action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court must read the plaintiff's *pro se* pleading indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

**II.     Factual Allegations**

The plaintiff names as defendants Overton County Sheriff W.B. Melton, Overton County Jail Administrator Shannon Harvey, former Overton County Jail Administrator John McCloud, L.P.N. Debbie Deck, and defense attorneys John Meadows III and Art Johnson. The plaintiff sues all the defendants in both their official and individual capacity, except he purports to name Meadows and Deck as defendants in their official capacity only. (*See* Complaint, ECF No. 1, at 5–7.)

The plaintiff's complaint is rambling and difficult to understand, and it encompasses claims related to a number of different issues. The plaintiff's primary concern seems to be that he has been incarcerated for more than three years at the Overton County Jail, where he remains constantly concerned for his safety because he was convicted as a sex offender, and the jail administrators allegedly have not been successful in protecting convicted sex offenders from the wrath of the general inmate population. The plaintiff does not allege that he has actually been attacked by other inmates, but instead states that he lives in constant fear of being attacked. He claims that he "continued to live under fear of harm up until Jail Administrator McCloud was replaced by Shannon Harvey in or around February 2011.  Under Harvey's orders, all the sex offender inmates were moved to maximum security cell 118. However, the plaintiff was removed from "max" approximately 15 minutes later "due to the uprising in max due to my race[1] and charge." (ECF No. 1, at 8.) The plaintiff was then placed in "worker cell 133" and given the "cell cleaners job," which he kept until he resigned on May 29, 2013. He has continued to feel threatened while housed in cell 133, because he is housed with non-sex offenders. He resigned from his job in May because it required him to go into "max" areas of the jail, and two corrections officers were "spreading the charges of the sex offenders throughout max using derog[a]tory words and demeanor knowing that that will cause the other inmates to try and exact the[ir] own brand of justice if they can." (ECF No. 1, at 11.) The plaintiff also alleges that it is common knowledge that the cell locks in the max pod can be easily "popped" "using just a strip of sheet with a weight at the end." (ECF No. 1, at 13.) The plaintiff has submitted numerous requests to be transferred to a state-operated prison where he would feel better

---

[1] The plaintiff never identifies his race.

protected from other inmates.

The plaintiff complains that being held in the jail affects his ability to participate in programs that are offered in the state-run prisons, including mental health and rehabilitative programs, none of which are offered in the Overton County Jail.

The plaintiff has submitted numerous requests to be allowed access to the law library, to no avail. He indicates that the lack of access to the law library and legal materials has hindered his ability to research his rights, including his right to petition in the state courts for post-conviction relief.

The plaintiff also submitted requests to permit sex offenders housed in protective custody to have access to church services, also without success.

The plaintiff alleges he became very ill in January 2012, but was refused any treatment by L.P.N. Debbie Deck other than aspirin and saline nasal spray. The plaintiff asserts that he endured severe abdominal and muscle cramps and diarrhea for 7 days, and lost 31 pounds as a result. Since that illness, he has had hemorrhoids that cause constant pain, and he has been denied medical care for that condition as well. He has also been trying for more than 6 months to see a dentist for cavities that have manifested since his incarceration. In addition, the plaintiff alleges that he was advised by a mental health counselor (as part of a program that has now been discontinued because of lack of funding) that he was suffering from severe depression and possibly other "mental maladies" "due to the extreme circumstances, pain and verbal abuse" the plaintiff has suffered since being incarcerated at the Overton County Jail (ECF No. 1, at 20), but that no mental health services are offered at the jail.

The plaintiff also believes he may be entitled to "punitive damages, post conviction relief" against his prior defense attorney, Art Johnson, as a result of the plaintiff's not having been fully apprised of the consequences of pleading guilty to a sex-related offense. Specifically, the plaintiff claims he was never informed about "the full extent of the registry law." (ECF No. 1, at 8.) He thought the lifetime limit for registration was 10 years, and he had no idea he would not be allowed to be around his grandchildren. He states that, if he had known that, he never would have entered into the "best-interests" plea. (ECF No. 1, at 15–16.) He did not learn about the full requirements of the sex-offender registration and lifetime probation until after he had pleaded guilty. He also states that it was not until July 2013 that he learned from another inmate that he might have a due-process claim, but he has been unable to educate himself

about possible claims because he has been denied access to the law library during the three years that he was been confined at the Overton County Jail. The plaintiff appears to believe that Art Johnson's representation of him was ineffective because the attorney encouraged the plaintiff to plead guilty even though the evidence against him, according to the plaintiff, was not strong.

With respect to attorney John Meadows, the plaintiff claims that Meadows told him early in the course of his representation that the plaintiff would not get a fair trial in Overton County because of his race and the charges against him. Meadows encouraged him to plead guilty even before obtaining discovery materials from the state. Meadows recused himself from the case after the plaintiff's bond hearing, however, because of a conflict of interest.

The plaintiff states specifically that his claims against Sheriff Melton are premised on a policy or practice of failing to offer adequate medical or mental health services to state inmates who are housed at the Overton County Jail, which constitutes cruel and unusual punishment for inmates such as the plaintiff who have been housed there for more than three years.

The claim against Shannon Harvey is purportedly based on a policy or practice of denying access to the courts and hindering the filing of pleadings in courts, as manifested by the plaintiff's lack of access to a law library. The plaintiff's claim against Harvey also appears to be based on the jail's failure to respond to inmate grievances in a timely fashion, which the plaintiff claims amounts to a due-process violation.

The plaintiff sues former Jail Administrator John McCloud based on McCloud's having deprived him of access to the law library.

The plaintiff sues Debbie Deck for deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment.

The claims against attorney Meadows arises from Meadows' failure to disclose all the evidence against him and for attempting to "coerce" the plaintiff into pleading guilty without being fully informed of the evidence against him and while he was operating under a conflict of interest. The claim against attorney Johnson is based on Johnson's alleged failure to fully disclose the evidence to the plaintiff and "not advising [the plaintiff] with a course of defense that had [his] best interest in mind." (ECF No. 1, at 22.)

**III. Discussion**

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Gratta*n, 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

As an initial matter, the Court finds that the claims against attorneys Meadows and Johnson must be dismissed because criminal defense attorneys, even if they are public defenders or appointed by the court, are not "state actors" and therefore are not subject to suit under 42 U.S.C. § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

The Court notes that, to the extent the plaintiff believes he has claims against his defense counsel based on malpractice, such state-law claims do not confer jurisdiction over these defendants in the absence of a viable federal claim. They may be brought in state court instead. Insofar as the plaintiff seeks post-conviction relief based on the alleged deprivation of his Sixth Amendment right to reasonably effective counsel, his only recourse is to seek post-conviction relief in the state courts and thereafter, if necessary, to bring a petition for the writ of habeas corpus in this Court under 28 U.S.C. § 2254.

Insofar as the plaintiff seeks to bring claims based on his lack of access to rehabilitative programming, it is well settled that prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989). Thus, the plaintiff's claim related to the absence of rehabilitative programs at the Overton County Jail fails to state a claim upon which relief can be granted.

Likewise, the plaintiff fails to state a claim based on the jail's failure to respond to grievances in a timely fashion, because the plaintiff does not have a constitutionally protected liberty interest in the

grievance procedure. *See, e.g.*, *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ( "Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under § 1983 for failing to respond to grievances that alert them of unconstitutional actions).

The Court further finds, however, that the complaint states potentially colorable claims against the remaining defendants, whether in their official or individual capacity, or both, based on allegations of the deliberate indifference to the plaintiff's serious medical and mental health needs, denial of access to law library, which had the effect of inhibiting access to the courts and prejudicing his ability to pursue post-conviction relief, denial of access to religious services, and potential risk of harm based on threats to the plaintiff from other inmates based on a general awareness that the plaintiff is a convicted sex-offender. It appears likely that many of these claims will ultimately be found to be barred by the statute of limitations. At this juncture however, because it is not altogether clear when the claims accrued, what efforts the plaintiff took to exhaust his administrative remedies, or how long that process took, the Court will not dismiss any claims on statute-of-limitations grounds.

The plaintiff expressly states that he sues L.P.N. Debbie Deck in her official capacity only. The Court will nonetheless construe the complaint broadly, based on the actual factual allegations in the complaint, to state a claim against Deck in her individual capacity as well.

**V.    CONCLUSION**

For the reasons set forth herein, the claims against defendants John Meadows III and Art Johnson will be dismissed without prejudice for failure to state a claim against them over which this Court has jurisdiction. The claims based on the lack of educational or rehabilitative programs at the jail and those claims related to the grievance procedure will also be dismissed. The remaining claims against the remaining defendants will be permitted to proceed.

An appropriate order is filed herewith.

_____
Kevin H. Sharp
United States District Judge